STATE of Utah, and State of Utah, by and through John W. Rolly, Director, Utah State Trade Commission, Plaintiff and Appellant.

v.

I. M. C. MINT CORPORATION, Robert Grabar, George E. Twibey, Stan Savara, Ross E. Lyons, Gary Hyde, and Richard Berkinshaw, Clarence Durrant, Robert Leiske, Defendant and Respondent.

No. 16555.

Supreme Court of Utah.

April 2, 1980.

Robert B. Hansen, Atty. Gen., Mark K. Buchi, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Herschel J. Saperstein and Karen Jensen of Watkiss & Campbell, Salt Lake City, for defendant and respondent.

STEWART, Justice:

This appeal is from a decision of the Third District Court which denied the State Tax Commission's claim for priority payment of the sales and withholding tax debts of the defendant corporation from assets held by a receiver.

In June 1974 defendant I. M. C. Mint Corporation was placed under a receivership following action by the Consumer Fraud Division of the Office of the Utah Attorney General, and a receiver for the corporation was appointed. The Tax Commission had previously requested the corporation to agree to an audit and to make application for a sales tax license. The audits were completed on June 20, 1974, and the results were sent to the taxpayer on June 25, 1974. The receiver had been appointed on June 21. The Commission did not receive notice of the receivership; it mailed a notice of intent to file a tax warrant on September 11, 1974. The Commission subsequently filed claims of preferred debt with the receiver in the amount of $12,380.79 for unpaid sales tax and $7,538.22 for unpaid withheld income taxes.

The receiver filed objections to the Commission's claims, stating that (1) the claims had no priority over those of general creditors except to the extent that lien status was conferred on the tax debts by statute; (2) there was no tax lien as of the date the receivership was instituted since no warrant had been filed by the Tax Commission; and

(3) penalties included in the claims were not allowable. A hearing on the objections was held in district court in March 1979. Following arguments and the submission of memoranda by both parties, the trial court issued an order sustaining the receiver's objections.

■ The issue on appeal is whether a lien existed at the time the receivership was instituted in favor of the State of Utah for unpaid sales tax and withheld income taxes and for penalties in connection therewith before a Tax Commission warrant was issued. The State argues that taxes are inherently paramount to the demands of other creditors and that a tax lien arises when income tax has been withheld and not remitted to the Tax Commission as required by law or when sales tax amounts are due.

In *Phillips Petroleum Co. v. Wagstaff*, 22 Utah 2d 177, 450 P.2d 100 (1969), this Court held that delinquent withholding taxes do not constitute a lien before the filing of a warrant. *Phillips Petroleum* interpreted statutory language that was reenacted by the Legislature in 1973, essentially without change from that in effect in 1969 when *Phillips Petroleum* was decided. The Commission had based its priority claim on § 59–14–71(3)(e),[1] the predecessor of § 59–14A–44(e), which contains nearly identical language. In construing the statement that "the state of Utah shall have a lien to secure the payment of any amounts withheld and not remitted," the Court was "inclined to the view that the lien of a state for delinquent withholding taxes begins to run at the time notice thereof is given by filing the warrant."[2]

The Commission attempts to distinguish the present case from *Phillips Petroleum*, which concerned a suit to foreclose a mortgage. The tax Commission had asserted in that case that its claims for delinquent withholding taxes constituted liens that were superior to the mortgage by reason of the statutory provision that the state's lien to secure payment of such taxes "shall be prior to any lien of any kind whatsoever including existing liens for taxes."

The Commission in the case at hand contends that the holding of *Phillips Petroleum*, that a recorded mortgage had priority over a tax lien for which no warrant had been filed, simply reflects the Court's recognition of, and strict adherence to, the system of recording of matters affecting title to real property. No comparable recording exists with respect to personal property. Although creditors are entitled to rely on the recorded status of real property, the Commission argues, the creditors in this case "did not rely on any record in extending credit the way a secured party does"; nor did they rely on a particular asset which would be available to them if a default occurred as to secured property. The Commission therefore argues that *Phillips Petroleum* is inapplicable.

The Commission's argument is not persuasive. It may not be assumed that general creditors lend substantial sums, as in the present case, without investigating public records that are pertinent to a company's financial status, such as those in the office of the Secretary of State and the County

1. All statutory references are to Utah Code Annotated (1953), as amended. Section 59–14–71(3)(e) states:

    (e) Every employer who deducts and withholds any amounts under the provisions of this act shall hold the same in trust for the state of Utah for the payment thereof to the commission in the manner and at the time provided for in this act and the state of Utah shall have a lien to secure the payment of any amounts withheld and not remitted as provided herein upon all of the assets of the employer and all property, including stock in trade, business fixtures and equipment, owned or used by the employer in the con-

duct of his business, so long as any delinquency continues, which said lien shall be prior to any lien of any kind whatsoever including existing liens for taxes.

2. The warrant procedure is set out in § 59–14A–79(c)–(e) and § 59–15–11. It provides for the issuance of a warrant directing a sheriff to sell the delinquent taxpayer's property for the payment of assessed but unpaid taxes. The warrant is to be filed with the clerk of the appropriate district court to be entered in the judgment docket. The amount due "thereupon [becomes] a binding lien upon the real, personal and other property of the taxpayer."

clerk. The facts of the present case, though different from that of *Phillips Petroleum*, do not require a different result.

Alternatively, the Commission argues that *Phillips Petroleum* should be overruled because it is in conflict with the general policy of preference for tax obligations, and because that policy justifies the creation of a lien at the time a tax debt arises. However, we decline to overrule *Phillips Petroleum*. The case is of long standing, was in effect accepted as a proper statement of the law in 1973 by the Legislature's reenactment, and, since the Legislature in fact changed the law in 1979, we would in effect be making that enactment retroactive by reversing *Phillips Petroleum*. We think it sufficient to rely upon the law enacted in 1979 for prospective application.

Subsections (2) and (3) of § 59–10–22 were changed by the Laws of Utah, 1979, as follows:

(2) If any person liable to pay the Utah sales and withholding tax neglects or refuses to pay the same after demand, the amount, including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto, shall be a lien in favor of the State of Utah upon all property and rights to property, whether real or personal, belonging to such person.

(3) Unless another date is specifically fixed by law, the lien imposed for state taxes shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

Although lien priority of tax debts is now established by statute to date from the time a tax assessment is made, the ruling of the trial court in the present case is controlled by *Phillips* and the pre-1979 tax statutes. Affirmed.

CROCKETT, C. J., and MAUGHAN and HALL, JJ., concur.

WILKINS, J., does not participate herein.